```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA

RHEANNA R. CHANCEY,              )
                                 )
             Plaintiff,          )
                                 )
                                 )   Case No. CIV-20-314-RAW-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
             Defendant.          )
```

### REPORT AND RECOMMENDATION

Plaintiff Rheanna R. Chancey (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 36 years old at the time of the ALJ's decision. She has at least a high school education and no past relevant work. She alleges an inability to work beginning on May 1, 2015, later amended to April 26, 2018, due to limitations resulting from heart attacks, back surgery, neuropathy, diabetes, fibromyalgia, congestive heart failure, hypertension, high cholesterol, pancreatitis, liver problems, and arthritis in her back and joints.

### Procedural History

On April 26, 2018, Claimant filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Her application

3

was denied initially and upon reconsideration. On December 13, 2019, ALJ James Stewart conducted a video hearing from Tulsa, Oklahoma, in which Claimant participated from Muskogee, Oklahoma. On January 13, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on July 8, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to follow the required legal standards resulting in the hypothetical question to the vocational expert ("VE"), the RFC assessment, and the step-five findings being unsupported by substantial evidence, (2) failing to properly consider new and material evidence, and (3) failing to properly assess the consistency of her complaints with the evidence of record.

**RFC Assessment**

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the lumbar spine, post-2008 laminectomy/fusion surgery, obesity (severe in combination with degenerative disc disease), type II diabetes (severe in combination with diagnosis of upper and lower extremity neuropathy), carpal tunnel syndrome, irregular heart rhythm (irregular sinus venous tachycardia), right shoulder rotator cuff injury, carpal tunnel syndrome, asthma, and ulcerative colitis. (Tr. 17). He determined Claimant could perform sedentary work with additional limitations. Claimant could not engage in climbing of ladders, ropes, or scaffolds and no stooping or crawling. She could occasionally crouch, kneel, balance, climb ramps or stairs, and reach overhead with the right side. Claimant could frequently handle bilaterally. She was to have no exposure to hazards, including unprotected heights, open flames, dangerous machinery or equipment, and other hazardous conditions. The ALJ noted that not all moving machinery was dangerous, for example, machinery which had moving parts that are shielded. Claimant was to have no exposure to elevated levels of fumes, dust, gasses, odors, poor ventilation, or other respiratory irritants. The ALJ defined "elevated level" as "concentrations in excess of that normally found in modern office buildings or light manufacturing facilities." (Tr. 20).

After consultation with the VE, the ALJ determined Claimant could perform the representative jobs of document preparer, semiconductor bonder, and touch-up screener, all of which he found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant was not under a disability since April 26, 2018, the date the application was filed. (Tr. 31).

Claimant asserts the RFC assessment fails to adequately account for her back pain, pain and fatigue, obesity, and mental health limitations. Regarding her mental limitations, Claimant contends the ALJ erred by not including any mental limitations in the RFC or the hypothetical questions to the VE after finding she exhibited mild limitations of functioning at steps two and three.

The ALJ considered the four broad mental functioning areas, determining that Claimant had no limitation in understanding, remembering, or applying information, mild limitation in interacting with others, mild limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself. (Tr. 18-19). He found Claimant's depression and anxiety were medically determinable impairments, but they were not severe because they did "not cause more than minimal limitation in the [C]laimant's ability to perform basic mental work activities[.]" He noted that Claimant took medication for the conditions, but she did not receive ongoing treatment or evaluation for them. (Tr. 18).

The ALJ discussed the evidence that Claimant was diagnosed with major depressive disorder (moderate and recurrent) and an unspecified anxiety disorder in April of 2019. (Tr. 28, 671). He also addressed the state agency psychologist's opinion that Claimant did not suffer from a medically determinable impairment, finding it only partially persuasive, because it did not take into account the later evidence of Claimant's diagnosis of major depressive disorder and anxiety. The ALJ concluded that although he was "persuaded" of Claimant's mental condition, "it [was] not sufficiently limiting so as to prompt the [C]laimant to obtain ongoing support through treatment." (Tr. 29). This Court finds that the ALJ properly considered Claimant's mental impairment and explained why he found it non-severe and why he did not include mental limitations in the RFC.

Related to her physical impairments, Claimant asserts the ALJ improperly considered her use of a cane for ambulation, including his evaluation of medical opinions in the record, all of which indicated that Claimant needed an assistive device to ambulate. Claimant's medical records show that as early as December of 2010, she was prescribed a cane for "ambulation as directed." This was noted in a review of her medications from January of 2017. (Tr. 654). Claimant testified at the administrative hearing that she was prescribed a cane for ambulation in 2012 and had used a cane continually for 6-7 years. When questioned by the ALJ about why

7

there was no notation in her pain management records that she was using a cane, Claimant testified that she did not have to use it on her "good" days, but she also testified she always has a cane or her walking stick with her. When questioned again, she testified she had her cane with her. (Tr. 60-63,70).

In the decision, the ALJ discussed Claimant's medical evaluations for her various conditions from June of 2017, April of 2018, September of 2018, February of 2019, September of 2019, and October of 2019, noting specifically that treatment records made no mention that Claimant utilized an assistive device or had an abnormal gait. (Tr. 22-23, 26, 581-85, 597-601, 602-06, 640-44, 874-79). He also discussed and relied upon medical records from the same time period when it was noted Claimant's gait and posture were normal, but examination findings also included that straight leg raise in the sitting and reverse positions was positive, right and left toe walking was abnormal, and right and left heel walking was abnormal. (Tr. 23-24, 1010-14, 1093).

Regarding the opinion evidence, the ALJ discussed that Claimant was examined by consultative physician Dragos Vesbianu, M.D., in August of 2018. Claimant's chief complaints were back pain, leg pain, and right shoulder pain. Her physical examination revealed an antalgic gait with slow speed, decreased safety and stability, and a limp. Dr. Vesbianu indicated that Claimant required the use of a cane to ambulate. In addition to diabetes,

inappropriate sinus tachycardia, high cholesterol, and tobacco use, Dr. Vesbianu assessed Claimant with back pain, including residual pain that limited Claimant's mobility and her ability to stand. He stated that Claimant "cannot walk without [a] cane more than 15 ft. [and] [w]ith [a] cane she walks and stands with difficulties." (Tr. 25, 383-89).

In September of 2018, reviewing physician Ronald Painton, M.D., reviewed Claimant's medical records and limited her to sedentary work with additional postural limitations. He specifically included a limitation for Claimant that "[a] cane is required for all surfaces when walking over 15 feet." (Tr. 28-29, 80-83). In December of 2018, reviewing physician Karl Boatman, M.D., also concluded Claimant was limited to sedentary work, which included a limitation that "[a] cane is required for all surfaces when walking over 15 feet." (Tr. 28-29, 95-98).

The ALJ made the following findings in the decision regarding Claimant's use of a cane and the opinion evidence in the record:

> The State's DDS physicians limited the [C]laimant to sedentary work with the use of a cane. A sedentary RFC is generally persuasive inasmuch as it is reasonably consistent with the [C]laimant's reports of back pain and discomfort and her history of back surgery. However, the DDS physicians' limitation with the use of a cane is not persuasive. Exs. 2A and 4A. In testimony, the [C]laimant said she had used a cane for 7 years and at the hearing, she presented with a cane. It appears that the DDS physicians relied on (or were persuaded by) the consultative examiner's report, which was fairly limited and at which the [C]laimant was apparently using a cane, but the other records and specifically, the records of

9

> the [C]laimant's pain management treatment was absolutely absent evidence of the use of an assistive device and consistent with a normal gait and normal posture.

(Tr. 28-29). In another portion of the decision, the ALJ stated that the "[e]vidence of reported cane use is conflicted." He relied upon examination findings of a normal gait and there being no indication that Claimant needed an assistive device to ambulate. He determined that Claimant's explanation for the inconsistencies was not "satisfactory." (Tr. 29-30).

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, an ALJ is not required to discuss all of the evidence in the record. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

When discounting the opinions from the consultative examiner and the reviewing physicians that Claimant needed to utilize a cane when walking more than 15 feet, the ALJ relied, in part, upon Claimant's treatment records because they did not specifically

10

state that she was using an assistive device and did not indicate her gait was abnormal. These records, however, are not evidence of an inconsistency, as they do not state either way whether Claimant was using an assistive device and do not comment on her gait. Moreover, the ALJ also relies upon treatment records which included normal findings as to Claimant's gait and posture, but he fails to explain how he accounted for the abnormal findings in the same records, wherein Claimant was found to have positive straight leg raise in the sitting and reverse positions, abnormal right and left toe walking, and abnormal right and left heel walking. (Tr. 1011, 1017, 1020, 1025, 1031, 1037, 1043, 1057, 1064, 1071, 1078, 1085, 1093).[2] This Court finds that the case should be remanded for the ALJ to properly evaluate the medical opinions regarding Claimant's use of a cane with the evidence of record.

The Court notes that this error is not harmless. When the ALJ included Claimant's need to use a cane for ambulation for walking more than 15 feet in the hypothetical question to the VE, the VE testified that in her opinion "the use of a cane is a special accommodation . . . [and] there would be no work in the national economy for someone with that special accommodation." (Tr. 68-69). She further confirmed that with the use of a cane,

---

[2] This Court would note that in a treatment record from January of 2019, Claimant was seen at Muskogee Bone and Joint for right shoulder pain. In the history portion of the medical record, it notes Claimant's use of a cane. (Tr. 668).

11

the jobs she identified for Claimant would be eliminated as would all competitive employment. (Tr. 70-71).

Claimant also argues that the Appeals Council failed to properly consider new and material evidence related to her sinus tachycardia limitations. (Tr. 8-9). Although the cardiac questionnaire was completed by Chelsea McGee, D.O., on January 23, 2020, the questionnaire indicates that she began treating Claimant in May of 2017 and last treated Claimant in November of 2019. It states Claimant is treated quarterly, and Dr. McGee answered "yes" when asked if any limitations, symptoms, and diagnoses on the questionnaire existed on or before April 26, 2018. (Tr. 8-9). This Court finds that on remand, the ALJ should consider the additional medical record.

## Evaluation of Symptoms

Claimant further contends the ALJ failed to perform a proper analysis of her subjective complaints because of his other errors. Because the evaluation of Claimant's symptoms is tied closely to the RFC determination, after properly considering the opinion evidence regarding Claimant's use of a cane in conjunction with the other evidence of record, the ALJ should reconsider his assessment of Claimant's subjective symptoms on remand. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's

RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of the Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 30th day of August, 2022.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE